24-3147, Coones v. Board of County Commissioners. Mr. Cooper, you may proceed. Thank you, your honor. May it please the court, David Cooper, on behalf of the appellants in this case. This is a wrongful conviction civil rights case and an interlocutory appeal from a denial of qualified immunity. Plaintiffs' claims that are at issue in this case are count one, which is a due process violation. There are two parts to that due process claim. The first is a Brady type claim, a suppression or withholding of evidence. The second is a fabrication claim, claiming that Detective Michael fabricated evidence regarding the location of a van in alibi defense. Second count is a malicious prosecution claim, claiming that there was not probable cause to arrest, charge, or try Pete Coones for the murder of Kathleen Schroll. I'd like to take those in reverse order, beginning with the second claim first, and the district court erred by finding that there was no probable cause. The undisputed historic facts that are actually set out in the district court's opinion show there was probable cause to arrest Mr. Coones, to charge him with the murder of Kathleen and Carl Schroll, and his conviction for the murder of Kathleen Schroll. Are we looking at probable cause or arguable probable cause? Both. We advanced that argument both in the alternative, but it is the appellant's position that as a matter of law, there was probable cause to charge Mr. Coones with these crimes, and that probable cause existed at the time of his arrest and never went away. Those undisputed historic facts are Kathleen Schroll's dying declaration to her mother, Elizabeth Horton, identifying Pete Coones as the killer, and then immediately following up that call, identifying Pete Coones as the killer, Kathleen Schroll was found dead, lying face up in her living room, with a contact wound to the back of her head. Well, I understand that evidence, but it led to an arrest and conviction. The theory here is that the decision makers had not been disclosed relevant material evidence that would bear on a finding of probable cause, which is what Brady is all about. I think Judge Robinson order says, well, if the decision maker had the facts, there may not have been sufficient probable cause to make the arrest or the conviction. What's wrong with that? Well, I read Judge Robinson's case the same way you just articulated, Judge. The argument is, and our position is, and we believe it to be correct, is that there was still probable cause. Considering those additional facts and factors that the plaintiff claims and the court says there's evidence to credit being withheld, there's still probable cause. That's what I was going through, which is, again, the dying declaration, Carl and Kathleen were both dead of a gunshot wound. Okay. We understand the four corners of the warrant and see the evidence that's in there, but how do you account for this or what weight do you put on it? The medical examiner originally ruled murder, and then when was given additional facts, the sorts that we're talking about, not in the four corners, said would have changed his mind. That sounds like it had a big effect on probable cause determination. Well, to answer your question, Judge Phillips, the reasons that Dr. Mitchell changed his opinion from homicide to suicide has nothing to do with the information available to or communicated by or withheld by detectives Michael or Garrison. Was it the gunshot residue on the left hand that came in way late? Correct, but neither Garrison nor Michael were CSI detectives. They didn't collect that. They didn't interpret that. What they didn't do is they didn't ask for follow-on testing of the gunshot residue from the KBI lab. As an aside, that testing would not have been available at that time anyway, but that is not pertinent and not material to the argument that I'm advancing. The argument that we're making is that there still was probable cause, even if you consider these things that were withheld or allegedly withheld, that those things are the KBI check forgery report. That's information not available to or attributable to Detective Michael or Garrison. That was Detective Block's case, and he's been dismissed from the case. First, it's air to say, foot to fault Detective Michael and Garrison on the probable cause with respect to the forgery report, which they never knew of. What about the suspicious activity report with regard to her embezzlement from her employer? That and the quick trip video are the two items that the court hung its hat on in terms of saying that there might not have been probable cause. That's not the appropriate standard. There was probable cause. If you assume those facts to be true, meaning that had Detective Michael passed on the suspicious activity report from the credit union and passed on the fact that they reviewed the quick trip video and the quick trip video did not corroborate the statement to the daughter that Pete and Kathleen had had an encounter at the quick trip, that doesn't make probable cause go away. When you add those in, there's still probable cause to believe Pete Coons killed Kathleen Schroll. Well, I guess the view of the district court was that that withheld evidence would have called into question Kathleen's credibility. I agree with that, but that is not the standard for probable cause. It's facts and circumstances known to the arresting officer that would cause a reasonable person to believe that the crime had been committed. And crediting the suspicious activity report, there's disputed evidence, but on summary judgment, we have to take plaintiff's version of the evidence and we do. So the suspicious activity report should be considered in the probable cause analysis. The quick trip video should be considered in the probable cause analysis and neither of them make probable cause go away. There was probable cause all along and the probable cause standard does not require that a detective discredit or disbelieve or to give more credit to the suspect's denial of the claim or the alibi witnesses. I'm perplexed as to why you want to argue probable cause as opposed to arguable probable cause, because it's my understanding that the standard in this context is arguable probable cause, which is an easier burden for you. I grant you that. There's an argument that we forfeited the qualified immunity argument. We don't believe we forfeited that argument, but there's a very practical reason for that judgment cue, which is with respect to the probable cause analysis versus arguable probable cause analysis. That's the difference between no constitutional violation and qualified immunity because it's not clearly established. The unified government would not be entitled to judgment if the hat's hung on the arguable probable cause standard as opposed to the probable cause standard. Thank you. Does it matter that the suppressed evidence flowed through into the trial as opposed to just the probable cause for the initial arrest and preliminary hearing? On the Brady claim, it does. The jury knew, this case was tried twice, that evidence was admitted in both trials. Both juries convicted Carl of Kathleen's murder, knowing that that quick trip video existed. But they didn't, at that time, the jury didn't have, did they have the suspicious activity, the embezzlement information? No, that's all post-trial. And they didn't have the gunshot residue on her left hand either, right? That's all true. All of that evidence emerged during the 1507 or the habeas corpus proceedings that got the conviction vacated in 2019. So that evidence was not evidence known at the time for the... I burned more than half my time with respect to that argument. And so, Judge McHugh, coming back to close the loop on the arguable probable cause, we do argue in the alternative, the easier standard of arguable probable cause, which would give both Michael and Garrison qualified immunity from the malicious prosecution claim, but it would leave the underlying claim, the Minnell claim against the unified government standing. With respect to the Brady claims, because I separate the Brady and the fabrication claims, but let me address the fabrication claim first, because we're going to run short on time. First off, that only involves Detective Michael, not Detective Garrison. And that's undisputed by plaintiff in the briefing. So she at least is entitled to judgment on that claim as well. With respect to the Brady claim, there's two asks here. One is the district court made an error on the materiality determination, because there's 12 pieces of withheld evidence that was argued on the 1507, the habeas claim. Only two of those lie at Detective Garrison and Michael's foot. And that's the FBI forgery report. Well, it was the court determined the FBI forgery report, which was known to them. And the fact of the quick trip video, I think it's legal error for the district court to have concluded that was withheld evidence because it wasn't withheld. That evidence found its way in front of the jury in both trials. So I don't know why that should be considered in part of the materiality determination when it was in fact not withheld. Now, they don't have the video, but that's a failure to preserve claim, not a withholding claim. So that's the first part of the ask. And that's the legal question there. There's a deeper issue with respect to the scienter requirement or the bad faith requirement that we argue should and has to be applied to a Brady claim or due process claim under both Brady and the Youngblood standard. And that argument is simple, which is the United States Supreme Court has always said, and all the circuit courts agree, that the Brady obligation is an obligation on the prosecutor, not the police officers. And when you apply Youngblood and Daniel, they say on their face that when you're trying to make a due process claim for money damages under 1983 and trying to lay that constitutional violation at the feet of a police officer, there's got to be evidence of bad faith on the part of the police officer, which is lacking here. Now, I acknowledge the Bledsoe case. I acknowledge the Gilkers case, where this court has said you can make a Brady claim, but the argument is and remains that that is an untest that decision. Those cases, first, they're on motions to dismiss, not summary judgment. And second, neither applies or requires a bad faith requirement, which Youngblood and Daniel say is required for a due process claim against police officers. Well, we require recklessness at least, right? Which I believe is the legal question here, that there's no evidence here of recklessness. Didn't Judge Robinson say that was a disputed fact at this point? She... Bad faith. I think she said that on listing out the facts, and she says from those facts, I think a jury can conclude. So I want to be clear that I am aware of which side of the fence I have to be on. I accept the facts. I don't accept the legal conclusion that a jury could breach the decision of recklessness. Okay. I'm confused by that, because one case that you don't cite in your brief is Johnson versus Jones or that line of cases that says, if the district court finds a genuine issue of material fact, we're not touching that unless there's an exception, which are difficult to meet, which you haven't argued. And so if the district court says I find a genuine issue of material fact on that, that's just game over, isn't it? I disagree with the applicability of that. Why haven't you cited Johnson versus Jones and dealt with that? I don't have a reason other than I'm focusing on the issues that I did focus on, Judge, but to address your question as to why... Judge Robinson found that there were material disputed facts with respect to whether Thad Jones did or didn't actually give them that suspicious activity report and whether they knew that. We accept that as a fact, but when you spot the fact that, all right, we accept that as a fact, that still doesn't get over the threshold of recklessness because for the arguments that we did make in the brief, which is even considering that the materiality of that evidence would not have been apparent to either Michael or Garrison at the time. And for that reason, it's either not a due process violation or at least the law is not clearly established in that regard. All right. Your time has expired. Well, let's hear from Mr. Ainsworth. May it please the court. What was known to the defendant officers at the time that the preliminary hearing was held was that there is no sign of forced entry at the house. There's no sign of a struggle. Nothing was stolen from the house. Kathleen was killed by her own gun, which was left at the scene of the crime, lying by the left side of her body. Kathleen was left handed, which was known to the defendants, as Judge Robinson noted in her opinion. There is blood spatter only on Kathleen's left hand. DNA testing on the gun revealed that there was only one person's DNA on the gun. That was Kathleen's, including on the barrel of the gun and on the trigger of the gun. Also known to the defendants was that at the time that Kathleen was killed, she was embezzling thousands of dollars from her employer in a very not sophisticated plot that was soon to be discovered, including the Friday before she was killed. She took a check out of her bank so that it would not be drawn upon her account, and that was soon to be revealed. Immediately upon her not showing up to work, the plot was revealed. She died on April 7th. By April 9th, a report was created by Thad Jones documenting the embezzlement tried to cover it up. That suspicious activity report was provided to the defendants on April 14th and that was known to them. What was also known to the defendants, if you take the facts as the court must at this juncture, in the light most favorable to the plaintiff, was that Mr. Kunz's van was at his home and visible to Defendant Michael when he came to the home the early morning hours of April 7th. When Detective Michael testified that he could not see the van where the ruts were, he was providing false information. If you accept plaintiff's allegations to be true, which the court must at this point, all of these facts come to the conclusion that there was probable cause for Mr. Kunz's arrest, but following that, that probable cause dissipated. And certainly this court could not conclude that no reasonable juror could find that probable cause dissipated. And under the Pierce case, which was argued before Judge Timcovich, and the Deloge case, as well as others, probable cause can dissipate when an officer can be held liable, when information material to that probable cause determination is withheld or fabricated, thus contaminating the process. And so it's no use saying that there was a probable cause finding when the defendant officers manipulated that process. Is that an objective standard that we would determine de novo, whether there was, even with the excluded evidence, whether there was still probable cause or arguable probable cause? So it's a mixed question of fact and law. The question of fact is determined by Judge Robinson below. This court would review the legal issue de novo. And here below, the defendants made no separate argument about arguable probable cause. And we point that out in our brief. In reply, the defendants have no explanation for why they did not forfeit the argument about arguable probable cause. They made the same argument about probable cause. Well, they made an argument about probable cause. And then in regard to qualified immunity, they simply repeated the boilerplate law and didn't touch the issue. But why shouldn't we, as a panel, find probable cause here, even after reviewing the record as a whole? Because probable cause, as this court's Deloach decision notes, is a quintessential jury question. Whether the evidence adduced was sufficient to meet the standard of probable cause, it's a complex one that requires weighing of the evidence, and it should be left to the jury. And here we have ample evidence that had the court making the decision to continue the prosecution against Mr. Coons, had the court known that Kathleen was embezzling thousands of dollars from her employer, was in severe financial trouble, was about to have that plot be discovered, and that Mr. Coons did not have the opportunity to commit the crime, as was represented to the court. Detective Michael told the court that when he was there in the early morning hours, Mr. Coons's van was gone. And we have to credit the record. The record is that Detective Michael testified that the van was not in the place where the family had indicated it would be, which is the ruts. So the whole issue about whether it could have been somewhere else is irrelevant to the issue. Detective Michael testified that the van was not where it was alleged to have been by Mr. Coons and the family. And thus, because of that, the court was under the impression that Mr. Coons had the means and no explanation for why he was gone from his home at 4.30 in the morning on the day that the victim was killed. That was powerful evidence of guilt. And you remove that and you're left with the only evidence on one side of the ledger is Kathleen's dying declaration to her mom, not to 9-1-1, in which the very first thing she says to her mom is that Pete stole the lawnmower from her house. I mean, that was her very first statement in the call when Pete was supposedly in the home killing her husband and herself. And then you find out that Kathleen is killed with her own gun, which was left at the scene of the house with her DNA on it. We can have arguments all day long about whether, you know, it suffices or not, but this is an interlocutory appeal. No reasonable juror could look at these facts and say, without a doubt, their probable cause continued even knowing that Kathleen was embezzling money, had reason to kill herself, that Kathleen had been lying about Pete Coons's threats to do her harm, and that Pete Coons's van was actually at his home at the early morning hours immediately after the crime was committed. He was a 50-year-old guy with no criminal history. There is plenty of reasons that a court, a jury could find that there was no, that probable cause had dissipated. Are you relying on Pierce v. Gilchrist for the malicious prosecution claim as clearly established law? That's one of the cases. Also, the Deloach decision, which cites a number of other Tenth Circuit cases, including Stringer and Marland. What's the clearly established case for the due process claim? For the due process claim, Bledsoe is one case that says, as of 1995, it was clearly established that officers could not withhold evidence or fabricate evidence, and this case arises in 2008. You know, there's a line of cases from the Johnson v. City of Cheyenne that cites a number of decisions talking about a police officer acting with deliberate or reckless intent can be held liable, including Tiscarino, which I think Judge Timkovich was also May I move to the due process claim?  Thank you. So there's a few things to say here. The Supreme Court's Daniels decision simply says that negligence is not enough, which is undisputed by any court. The Tenth Circuit has a long history of case law that says all that a plaintiff need prove is that the intent, the scienter requirement is that the officer acted recklessly, which Judge Robinson noted in her decision at page 37, which the defendants ignored wholly. And she cited a number of decisions, including the Johnson decision that, and the cases cited therein, that the defendants ignored wholly. This is the first time in this argument that the defendants have acknowledged that Bledsoe and Gilchrist argue against them. And the fact that those decisions are decided on a motion to dismiss standard rather than summary judgment is a distinct distinction without a difference. We're talking about the legal standard to be applied. It doesn't change at the motion dismiss stage or the summary judgment stage. This is well-settled law. There's no argument to the contrary. And we have, in regard to the materiality analysis, the district court determined that standing alone, the SAR report was material. It allowed the prosecutor to say that Kathleen had nothing, no reason to do anything other than keep on living. And Mr. Coons had nothing to rebut that argument with. And because that was material, all plaintiff need to show is that the quick trip video was withheld by the defendants. He need not show that the quick trip video was independently material to the outcome, because we assess materiality cumulatively. And we get that from the Supreme Court's Ciles v. Whitley decision. The 10th Circuit has adopted that same analysis. And certainly, it was withheld. And we're not talking- Didn't the officers testify about the video at trial, though? Yeah. So Detective Michael testified about it, but there's a line of cases. So look at Old Chief, the Supreme Court's decision, Old Chief, that says a prosecution does not have to stipulate to facts that the defense doesn't want it brought in. The plaintiff may bring its case to the jury in the ordinary and natural way they would like to do, meaning that if you have the best evidence, you don't need to rely on a stipulation. You don't need to rely on what somebody's saying about the evidence. You can present that evidence itself as the best evidence. And certainly, the jury knew from Detective Michael's testimony that he viewed this video. But if I'm trying the case as a criminal defense attorney, I want that video. I want to show, without a doubt, that what Kathleen and her credibility was crucial to the outcome of this trial, what Kathleen's threat statement, talking about a threat that happened two days before she was killed, was false. And this was a closely balanced trial. They convicted Mr. Coons of Kathleen's murder, but acquitted him of Carl Scholl's murder. And so you have a, you know, a divided jury, and anything that could have tipped that balance is Brady. We disagree with you about the video. Do you still have enough evidence to prove a Brady claim, enough evidence? Yes, because Judge Robinson, she found that the suspicious activity report was independently sufficient to be material to the outcome of the trial. And that's unassailable. There's no way you can look at the facts in this case, where the defense is trying to present evidence, you know, trying to argue that Kathleen killed herself. The prosecutor says she had no reason to kill herself. And there's every reason in the world when she's facing a felony, you know, indictment, and she's got financial hardship that was unknown to the plaintiff, to Mr. Coons during his criminal case, that is materiality, because it could have changed the, there's a reasonable probability that the outcome would have been different. This court doesn't have to decide that it, with certainty, it would have changed the outcome. So solely that no reasonable juror could find with certainty that it would not lead to a reasonable probability of a different result at trial. And that's a hard standard for Mr. Cooper at this stage of the proceedings. We were supposed to go to trial in November 2024. This appeal has delayed that trial. I think we now have disputes of fact, both sides are saying very different things. The only way to resolve those factual disputes is at a trial. And, you know, the law is clear. If there are no further questions, but... Counsel, Mr. Cooper, if you want 90 seconds, I'll give you a little bit of time. Judge, I really only have, the closure is the prayer, which is that Detectives Michael and Garrison didn't violate Mr. Coons' rights by withholding exculpatory evidence, or at least in the alternative, it's not clearly established. There was probable cause. We don't believe we forfeited the qualified immunity or the arguable probable cause standard. Those are addressed in the opening and reply briefs, and Stonecipher itself is quoted in the reply brief as well. And then with respect to the fabrication claim, which we didn't address in any depth, I do need to address the fact that the facts are set forth in Judge Robinson's opinion as to what Detective Michael said and didn't say. And he did not say that the van was not at the house. What he said was, if the van was where Pete Coons says it was, I wouldn't have seen it from where I was standing. So those are my closing remarks. I regret we didn't get to meet in Denver, and thank you for your time. Thank you, Counsel. We wish we could have been in Denver also. Your excuse in the case will be submitted.